Robert W. HUNT, M.D., et al., Petitioners,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; Marine Terminals Corporation, Respondents.

No. 91–70763.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1993.

Decided July 16, 1993.

---

Howard D. Sacks, San Pedro, CA, for petitioners-appellants.

Joseph T. Gillelan II, U.S. Dept. of Labor, Washington, DC, and Jack Williams, Glendale, CA, for respondents-appellees.

Before: FARRIS, NORRIS, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Petitioners, Dr. Robert Hunt and physical therapist Leon DiPalma, appeal the Benefits Review Board's decision that medical providers are not entitled to recover interest or attorney's fees in conjunction with an award of medical fees under the Longshore and Harbor Workers' Compensation Act (LHWCA). We have jurisdiction under 33 U.S.C. § 921(c), and we reverse.

## I

In September of 1982, Paul Bjazevich sustained a neck and back injury while operating a forklift for his employer, Marine Terminals Corporation. Bjazevich was examined and treated by Dr. Robert Hunt, an orthopedic surgeon who determined that the patient suffered from herniated discs in his neck and spine and a nerve root problem. Bjazevich declined Dr. Hunt's initial recommendation that he undergo spinal surgery, and instead began a treatment regimen consisting of physical therapy and medication. Physical therapy was provided on a daily and then a bi-weekly basis by Leon DiPalma.

Dr. Hunt filed a report notifying Bjazevich's employer of the course of treatment in accord with the requirements of § 7(d)(2) of the LHWCA, 33 U.S.C. § 907(d)(2) (1988). Marine paid Bjazevich disability benefits and paid Hunt and DiPalma for their medical treatment until September, 1985, when an orthopedist it had retained to examine the patient reported that he saw no evidence of any herniated discs, nor any need for further medical treatment. The orthopedist, Dr. Peter Lorman, saw Bjazevich only twice, and according to undisputed testimony before the Administrative Law Judge (ALJ), examined him for a total of ten minutes. Upon receipt of Lorman's report, Marine stopped paying medical and disability benefits. Hunt and DiPalma continued to treat the patient despite the termination of payments. Bjazevich attended his final physical therapy session in February of 1986, but as of the date of the ALJ hearing he continued to see Dr. Hunt every two months.

Bjazevich subsequently sued Marine for disability benefits under the LHWCA. Hunt and DiPalma retained separate counsel and intervened, seeking payment for medical services provided after benefits were cut off. On March 8, 1988, after a hearing, the ALJ ruled that Bjazevich was entitled to temporary disability compensation for the period between October 1, 1982 and October 13, 1985, and to permanent disability compensation thereafter. He further concluded that the treatment provided by Hunt and DiPalma was reasonable and appropriate under the Act, and ordered Marine to pay the outstanding medical bills. Marine appealed none of these rulings.

The ALJ denied the medical providers' claim for interest on the overdue medical bills. He acknowledged that the employer would have owed interest to the patient if he had paid the bills out-of-pocket and sought reimbursement, but reasoned that "paying interest directly to the *providers* of medical care must be deemed statutorily unauthorized, just as is the payment of interest to claimants' attorneys" (emphasis added). Finally, although the ALJ initially awarded Hunt and DiPalma their reasonable attorney's fees, on motion for reconsideration he vacated the award on the ground that the Act does not permit the award of attorney's fees to medical providers. Hunt and DiPalma appealed both these adverse rulings to the Benefits Review Board, and when that body affirmed the decision of the ALJ, they timely appealed to this court.

## II

We review decisions of the Board "for errors of law and adherence to the substantial evidence standard." *Hurston v. Director, OWCP,* 989 F.2d 1547, 1548 (9th Cir. 1993). Because the Board is not a policy-making body, we give no special deference to its interpretations of the LHWCA. *Id.* We do, however, accord "considerable weight" to the construction of the Act urged by the Director of the Office of Workers' Compensation Programs, as he is charged with administering it. *Force v. Director, Office of Workers' Compensation Programs,* 938 F.2d 981, 983 (9th Cir.1991). Where the relevant statute or statutes are "easily susceptible to the Director's interpretation, we need go no further." *Id.* at 984.

## III

■ We turn first to the question of whether Hunt and DiPalma are entitled to interest on medical bills which went unpaid for as long as two years before the ALJ issued his March, 1988 compensation order. It is the Director's position that, under a proper construction of the Act, they are.

The Act has no express provisions regarding interest payments. However, in *Foundation Constructors v. Director, OWCP,* 950 F.2d 621 (9th Cir.1991), we deferred to the Director's view that a claimant may obtain interest on an award of past-due disability benefits. We reasoned that, because "a dollar tomorrow is not worth as much as a dollar today," the remedial purposes of the Act would be undermined if employers were allowed to delay disability payments interest-free. *Id.* at 625.

■ Having deferred to the Director on the permissibility of awarding interest on past-due disability benefits, we defer to the Director's view that interest is payable on

sums owed for medical services as well. Nothing in the text or the policy of the Act leads us to believe that Congress intended to allow ALJs to assess interest on past-due disability benefits but not on overdue medical bills. *Cf. Lazarus v. Chevron USA, Inc.*, 958 F.2d 1297, 1302 (5th Cir.1992) (concluding that Congress did not intend to distinguish between medical and disability benefits for purposes of the enforceability of awards). On the contrary, both statutory text and policy are fully consistent with the Director's view that interest is available on overdue medical fees. The Act provides that a "party in interest" may petition the Secretary for an award of "the reasonable value of [ ] medical or surgical treatment" provided to an injured longshore worker. 33 U.S.C. § 907(d)(3). We can discover no statutory impediment to the view that the "reasonable value" of medical services rendered includes interest on sums that are overdue. As for the policy of the Act, we concur in the Fifth Circuit's recent observation that "[t]he financial burden that medical costs impose on an injured employee is just as debilitating as the loss of income resulting from the employee's inability to work." *Lazarus*, 958 F.2d at 1302. The remedial purposes of the Act would be undermined if employers were allowed to withhold medical payments—no less than disability payments—interest-free. Accordingly, there is no basis for refusing to defer to the Director's expertise in this matter. We adopt his view that interest may be assessed on overdue medical fees awarded under the Act.

The Board denied Hunt and DiPalma's claims on the basis of its prior decision in *Pirozzi v. Todd Shipyards Corp.*, 21 B.R.B.S. 294 (1988). In *Pirozzi*, the Board ruled that interest on medical payments is not available where the medical provider, rather than the employee, bears the out-of-pocket costs of medical treatment while the employer's responsibility to pay is being contested. In effect, the Board reasoned that where a medical provider elects to provide treatment to an employee whose employer refuses to pay

for it voluntarily, and further elects not to use aggressive means to obtain payment from the individual directly, the employee suffers no hardship as a result of the employer's intransigence. The Director squarely rejects the Board's reasoning, and concludes that interest is payable whether reimbursement is owed to the provider or to the employee. The Fifth Circuit reached a similar conclusion in the context of the prompt enforceability of judgments recovered by medical providers. The court held that distinguishing between claims brought by employees and providers in such cases "ignores the fact that [the employee] is personally liable for his medical bills." *Lazarus*, 958 F.2d at 1302. The fact that in some cases the provider does not seek to enforce its rights against the injured employee is a mere fortuity. *Id.* To hold that employers have no obligation to pay interest in such cases would be to provide them with a windfall. More important, if medical providers could not collect interest on long overdue fee awards, "there would be a substantial chilling effect on the provision of medical services to injured employees whose ability to pay is dubious." *Id.* Since many injured longshore workers will be unable to advance the costs of their own medical treatment and seek reimbursement later, medical providers would frequently face the prospect of lengthy delays in payment without the possibility of compensatory interest payments, and the medical services purchasing power of injured longshore workers would be correspondingly reduced. In addition, longshore workers would in all likelihood be subjected to far more persistent and troublesome collection efforts by medical providers and in some cases might suffer serious economic consequences. This state of affairs would hardly be consistent with Congress' intent in adopting the LHWCA, which was to aid longshore workers. *See Reed v. Yaka*, 373 U.S. 410, 415, 83 S.Ct. 1349, 1353, 10 L.Ed.2d 448 (1963) (LHWCA must be construed liberally to effectuate its purpose of aiding longshoremen).[1]

1. Marine contends, with very little explanation, that allowing prejudgment interest on awards to medical providers would be inconsistent with *Hobbs v. OWCP*, 820 F.2d 1528 (9th Cir.1987), in which we held that post-judgment interest is not available on attorneys' fees awarded under the Act. We reject the argument. First, our holding in *Hobbs* was based in part on the fact that there

On remand, the ALJ shall award the appropriate interest.

## IV

■ We now address the question of whether the Act entitles Hunt and DiPalma to recover attorney's fees incurred in connection with their successful effort to recover their medical fees. Section 28(a) of the LHWCA provides that, in cases where the employer controverts liability, attorney's fees may be paid to a "person seeking benefits" who successfully prosecutes a claim under the Act:

> If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter, *and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee* against the employer or carrier in an amount approved by the deputy commissioner, board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.

33 U.S.C. § 928(a) (emphasis added). The Board ruled that Hunt and DiPalma did not meet the statutory criteria for an award of attorney's fees because, in its view, only injured workers and their survivors can "seek benefits." The Director takes the position that medical providers, too, can "seek benefits." Once again, we defer to the view of the Director.

We discern a certain amount of support for the Board's view in the statutory scheme. Although the Act defines neither the term "benefits" nor the phrase "person seeking benefits," § 28(a) clearly uses "benefits" as a synonym for "compensation"—a term that *is* defined by the Act. Specifically, § 28(a) provides that a successful "person seeking benefits" shall be awarded a reasonable attorney's fee "in addition to the *award of compensation....*" The "award of compensation" referred to can only be the "benefits" that the claimant successfully sought.

The Act defines "compensation" as "the money allowance payable to an employee or to his dependents." 33 U.S.C. § 902(12). Conspicuously absent from the definition is any mention of money payable to medical providers. Thus, assuming that the terms "benefits" and "compensation" are indeed interchangeable as used in § 28(a), we are led to agree with the Board that Hunt and DiPalma "had no independent entitlement to medical or other benefits." Instead, their ability to recover the sums owed them is, as the Board says, "derivative of [Bjazevich]'s entitlement to medical benefits."

We do not think the Board took this analysis far enough, however. That the medical providers' ability to recover sums owed them

---

is no explicit statutory authorization for an award of *post-judgment* interest on money judgments awarded by an ALJ as opposed to a district court. *Id.* That analysis is inapplicable to the question of whether the Act allows awards of *prejudgment* interest in conjunction with a recovery of past-due compensation. Second, we reject Marine's cursory conclusion that attorneys' fees are "akin" to fees awarded to medical providers. The primary kinship we can identify is the fact that both medicine and law are professions. Far more relevant, we think, is the Director's observation that LHWCA attorneys *expect* lengthy delays in payment and typically structure their hourly rates to reflect the projected costs of delay. The Act explicitly provides that attorneys' fees are payable only after the conclusion of administrative proceedings. *See* 33 U.S.C. § 928(a). Medical providers, by contrast, gener-

ally expect prompt payment for their services, and are entitled to enforcement of a compensation order in advance of an appeal to the Benefits Review Board. See *Lazarus v. Chevron, supra.* Moreover, while attorneys are free to do so, it is doubtful that medical providers could successfully charge longshore workers more than other patients in order to take into account the likelihood of payment delays. *See* 33 U.S.C. § 907(b) (providing that the Secretary may order a change of physicians where medical charges "exceed the provider's customary charges"); 33 U.S.C. § 907(g) (limiting medical providers to "such charges as prevail in the community for such treatment"). Finally, we note that the Director did not take a position in *Hobbs,* while he has taken a position in the instant case; thus, the court in *Hobbs* was not required to exercise the deference that we owe in this case.

is "derivative" of Bjazevich's entitlement to medical benefits does not prove that the providers are statutorily incapable of "seeking benefits" on his behalf. As the Board acknowledged, and as we have previously noted, Section 7(d)(3) of the Act authorizes medical providers to recover "the reasonable value of [ ] medical or surgical treatment" provided to an injured worker whose employer was obliged to furnish him with medical care. 33 U.S.C. § 907(d)(3). The Director urges the interpretation that § 7(d)(3) grants medical providers standing to "seek benefits" on behalf of an employee where the benefits are owed to the provider for medical services rendered. In other words, although the Act does not confer any "benefits" on medical providers as such, it allows providers to seek to recover an injured employee's medical benefits to the extent that the benefits are owed to the provider in satisfaction of unpaid bills. The Director's interpretation is entirely compatible with the statutory scheme. Nothing in the LHWCA conflicts with the Director's view that § 7(d)(3) grants medical providers standing to pursue an employee's medical benefits under the circumstances present here.

We agree with the Director that his interpretation of § 28(a) best advances the purposes of the Act. In adopting § 28(a), Congress sought, first, to provide an incentive for employers to pay valid claims rather than contest them, and second, to ensure that the value of an employee's statutory benefits would not be diminished by the costs of legal services. *See Oilfield Safety and Machine Specialties, Inc. v. Harman Unlimited, Inc.,* 625 F.2d 1248, 1257 (5th Cir.1980). Permitting medical providers who prevail in LHWCA litigation to recover their reasonable attorney's fees serves the first goal by forcing employers to bear the legal costs of wrongfully refusing to extend medical benefits. *See id.* It serves the second goal as well because, as we observed in the previous section, unless employers are compelled to bear such collection costs, the costs will man-

ifest themselves in increased fees or decreased access to medical services for injured workers. *See Lazarus,* 958 F.2d at 1302–03. In short, the policy arguments that support our holding regarding the payment of interest to medical providers are equally applicable to the reimbursement of their attorney's fees.

We conclude that the Director's interpretation of § 28(a) is faithful to both statutory text and policy, and we defer to it. Accordingly, we hold that medical providers suing for compensation under § 7(d)(3) of the Act are "person[s] seeking benefits" for purposes of § 28(a) of the LHWCA.

## V

■ One further issue remains. The Benefits Review Board concluded, without offering any satisfactory explanation, that Bjazevich's attorney could have adequately represented Hunt and DiPalma before the ALJ and that therefore the attorney they retained did not serve a "necessary" function. 20 C.F.R. § 702.132(a). The Board erred. Bjazevich had no particular incentive to prove that Hunt and DiPalma's charges were "prevailing community charges" as required by § 7(g) of the Act and 20 C.F.R. 702.413. From a tactical standpoint his best stance may have been neutrality. Thus, it was more than reasonable for the medical providers to hire separate counsel to pursue their claims.[2] There being no further obstacle to Hunt and DiPalma's recovery of attorney's fees, we remand the case to the ALJ for reinstatement of the original, March 8, 1988 award of such fees.[3]

**REVERSED AND REMANDED.**

2. We note also that Hunt and DiPalma contend that Bjazevich's counsel was wholly unprepared to argue at least some of the issues affecting them. Appellee does not dispute this contention here. In fact, it offers no argument on the neces-

sity question other than to state declaratively that it is "moot."

3. Our holding makes it unnecessary to reach the medical providers' contention that they are enti-

tled to attorney's fees in light of the "bad faith" exhibited by Marine in the litigation below. In any event, it appears that Hunt and DiPalma waived this issue in the proceedings below.