United States Court of Appeals,

Fifth Circuit.

No. 93-5272.

PETROLEUM HELICOPTERS, INC. and National Union Fire Insurance
Company of Pittsburgh, Pa., Plaintiffs-Appellants,

v.

NANCY T. GARRETT, L.P.T., P.C., and Nancy T. Garrett d/b/a East
Texas Physical Therapy Services, Defendants-Appellees.

June 16, 1994.

Appeal from the United States District Court for the Eastern
District of Texas.

Before WOOD,[1] SMITH, and DUHÉ, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal arises from an Administrative Law Judge's order
directing the defendants to reimburse the plaintiffs for payments
they made pursuant to the Longshore and Harbor Worker's
Compensation Act for medical care to one of the plaintiffs' injured
workers. The ALJ determined that the medical care charges were
excessive and ordered the defendants to reimburse the amount of the
excessive charges. After the defendants failed to repay the
amounts in question, the plaintiffs filed suit in the district
court to enforce the ALJ's order. The district court dismissed the
suit for lack of subject matter jurisdiction and this appeal
followed.

I.

While employed by Petroleum Helicopters, Inc. ("PHI"), Jeffrey

---

[1]Circuit Judge of the Seventh Circuit, sitting by
designation.

Shives suffered a work-related injury that was covered under the Longshore and Harbor Worker's Compensation Act ("LHWCA"). On May 3, 1985, PHI and its worker's compensation carrier, National Union Fire Insurance Co. of Pittsburgh ("National"), entered into a settlement with Shives. PHI and National ("plaintiffs") agreed to pay Shives "reasonable costs of necessary past and future medical care and treatment resulting from the work-related injury."

In 1987, suffering from back pain, Shives began physical therapy treatments with defendant Nancy T. Garrettt, L.P.T.[2] Plaintiffs paid the charges for these treatments. Two years later they disputed the charges by defendants and ceased making payments. Shives then filed a claim with the Administrative Law Judge ("ALJ") for a determination of the parties' liability for the medical treatment charges. After conducting a hearing on the matter, the ALJ found that the services defendants provided were unreasonably lengthy and unreasonably expensive and that the back pain related from an injury for which PHI was not responsible. The ALJ then ordered defendants to reimburse plaintiffs for the amount of the unnecessary payments.

Following Shives' Motion to Reconsider, the ALJ confirmed its findings and ruling. Neither party appealed that decision to the Benefits Review Board, which would have been the appropriate course of action. 20 C.F.R. §§ 702.391, 802.204. Defendants failed to

---

[2]Nancy T. Garrett was an employee of Nancy T. Garrett d/b/a East Texas Physical Therapy Services. Both the individual and the organization are defendants in this suit. We refer to them collectively as "defendants".

reimburse the amount of the overcharges.  Plaintiffs then brought suit under the LHWCA in federal district court seeking enforcement of the ALJ's order and a money judgment for the amount of the overpayments.  The district court concluded that the LHWCA did not provide a cause of action and dismissed the case for lack of subject matter jurisdiction.

II.

The LHWCA provides no express cause of action for an employer to recover overpayments from a medical care provider.  Plaintiffs argue that an implied cause of action exists under 33 U.S.C. § 921(d) which would allow them to seek enforcement of the ALJ order compelling the reimbursement.  That section provides as follows:

> If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred....

33 U.S.C. § 921(d).  This statute expressly provides a cause of action only if the beneficiary of a compensation order is seeking to enforce that order against the employer or its agents.  The plaintiffs argue that by implication the statute must allow the employer to seek enforcement of an order compelling the reimbursement of that same compensation;  the only difference between the two causes of action is that the alignment of the parties is reversed.

The plaintiffs suggest that by implying a cause of action for them to recover overpayments from the medical care provider we would merely be "filling the gap" that Congress left when they

drafted the LHWCA. Contrary to the plaintiffs assertions, realignment of the parties is not the only difference between the language of section 921(d) and this case. That section speaks of a beneficiary enforcing a "compensation" order against an employer. The LHWCA defines compensation as "the money allowance payable to an employee or to his defendants." Relying on that definition, we have previously held that "[i]f an employer furnishes medical services voluntarily, by paying a health care provider for its services, it does not pay "compensation' within the meaning of the Act." *Lazarus v. Chevron U.S.A., Inc.,* 958 F.2d 1297, 1301 (5th Cir.1992). The plaintiffs are seeking reimbursement of payments they made directly to the medical care provider; therefore, they are not seeking reimbursement of "compensation."[3] Regardless of the alignment of the parties, the subject matter of the dispute simply is not covered by section 921(d) and plaintiffs' argument must fail.

Furthermore, even if we were to assume that this case did

---

[3]Plaintiffs cite *Hunt v. Director, Office Workers' Compensation Programs,* 999 F.2d 419 (9th Cir.1993), for the proposition that "compensation" should be interpreted more broadly. In *Hunt,* the Ninth Circuit interpreted the term "persons seeking benefits," found in section 928(a) relating to recovery of attorney's fees, as including medical care providers. In doing this they stated that "benefits" and "compensation" were interchangeable terms. *Id.* at 423. Plaintiffs argue that "compensation" then must include payments to medical care providers. The Ninth Circuit's conclusion, however, was based on the fact that the interpretation would advance the broad policy interest of protecting the employee's right to benefits. *Id.* at 424. Such a policy concern is not implicated in the current case. Nor does the current case involve the interpretation of 33 U.S.C. § 928(a). Therefore we leave the issues raised in *Hunt* for another day.

involve "compensation," plaintiffs' "fill in the gap" argument would nonetheless fail. Section 921(d) is very specific; it grants jurisdiction only in actions against the employer. "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978). Allowing a cause of action when the alignment of the parties is reversed is not filling a gap and effectuating Congress' intent, but contradicting the plain language of the statute. Plaintiffs have identified nothing that would suggest Congress intended anything but what they included in the statute. Had Congress intended that one could bring a cause of action against a medical care provider under section 921(d), we are at a loss to understand why they specifically limited jurisdiction to cases brought against employers or their agents.

In addition to the clear language of section 921(d), several other provisions of the LHWCA as well as the legislative history of the Act demonstrate Congress' intent that the employer should not have a separate cause of action to seek reimbursement of past payments. The LHWCA specifically addresses when and how the employers may obtain reimbursement for payments already made. In three separate sections the statute provides that the employer may recover past payments from an employee, but only by offsetting those payments against future compensation installments still due. *See* 33 U.S.C. §§ 908(j), 914(j), 922. The employer does not have

5

a separate cause of action to enforce a reimbursement order against an employee when no future compensation payments are due. *Ceres Gulf v. Cooper,* 957 F.2d 1199 (5th Cir.1992).[4] This is true even if the employee has engaged in fraud to obtain medical benefits. The LHWCA provides for the penalty in the event a claimant engages in fraud, 33 U.S.C. § 931(a)(1), but the "penalty does not include recovery of the payments obtained as a result of [the fraud]." *Ceres Gulf,* 957 F.2d at 1205. Consider for example an employee who fails to report earnings, in violation of section 908(j). Although according to the statute the employee's failure to report earnings results in a forfeiture of the right to compensation, Congress has stated that in such an instance "[t]he committee does not contemplate that the employer could bring a cause of action to recover compensation paid in the past." H.R.Rep. No. 570, 98th Cong., 2d Sess. pt. I, at 18 (1983) *reprinted in* 1984 U.S.C.C.A.N. 2734, 2751. The only means of recovering the payments would be through the offset methods provided in the statute. 33 U.S.C. § 908(j).

Although the holding in *Ceres Gulf* and the statutory provisions above relate only to an employer recovering past payments from an employee, similar provisions in the Act and similar comments in the legislative history compel our conclusion

----

[4]Defendants have argued that the holding in *Ceres Gulf* forecloses an employer's cause of action for reimbursement from any party. That case, however, addressed only the issue of an employer seeking reimbursement from an employee, not from a medical care provider, and its holding was limited that situation. 957 F.2d at 1204-09.

that the employer is foreclosed from bringing an action for reimbursement against medical care providers as well. For example, the Act provides that medical care providers who knowingly make false statements, or otherwise employ a fraud in order to receive payment for medical services, or knowingly submit bills for excessive charges etc., may be disqualified from participating in the system. *See* 33 U.S.C. § 907(c). In such a case, those medical care providers are not entitled to receive fees for their services under the LHWCA. 33 U.S.C. § 907(c)(1)(C). Congress specifically noted, however, that "the effect of any such disqualification to receive fees for medical services, ... [shall] be prospective only." H.R.Rep. No. 570, 98th Cong., 2d Sess. pt. I, at 14 (1983) *reprinted in,* 1984 U.S.C.C.A.N. 2734, 2747. Therefore, this disqualification would not affect the payments already received. Even if defendants had been disqualified to participate in the system, and nothing in the record even hints at such an action, Congress has made clear that the payments already received would not be affected.

These provisions demonstrate that the employer should have no claim for reimbursement against the health care provider even after a determination that fraud was involved. In this case there has been no finding that defendants defrauded the system and they have not been disqualified from participating in the system. If Congress would preclude a claim for reimbursement in the truly egregious cases mentioned above, we must conclude that they would

7

similarly reject a claim for reimbursement in this case.[5]

Finally the plaintiffs argue that we should imply a cause of action because having all claims relating to the LHWCA administered and reviewed under one federal system would be efficient and would best serve the intent of Congress in passing the Act.  As we discussed above, Congress intended that an employer not be able to bring a cause of action to recover overpayments from a medical care provider.  Therefore implying a cause of action would be not only an impermissible and unjustified expansion of federal court jurisdiction, but would also frustrate, rather than advance, the efficient use of judicial resources.[6]

### III.

The district court lacked subject matter jurisdiction to hear this matter and its order dismissing the case is

AFFIRMED.

---

[5]Plaintiffs also argue that denying them a cause of action in this case would result in unjust enrichment for the defendant medical care providers as they have "bilked" the system of money to which they are not entitled.  Unjust enrichment, however, is not a principal or even secondary concern in the statutory framework of the Act.  On the contrary, despite the unjust enrichment that would necessarily result when a medical care provider obtains payments by way of fraud, Congress nonetheless has precluded the employer from recovering those payments.  We therefore reject plaintiffs' unjust enrichment argument.

[6]Defendants also argue that they were not proper parties to the ALJ proceedings and therefore, the ALJ's order cannot be enforced against them.  Because we affirm the dismissal of this suit based on the lack of subject matter jurisdiction, we do not reach this issue.