**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

REX DYER,

                      *Petitioner,*

        v.

CENEX HARVEST STATES
COOPERATIVE; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS,

                      *Respondents.*

No. 07-73549

OWCP No.
07-0164

OPINION

On Petition for Review of an Order of the
Office of Workers' Compensation Programs

Argued and Submitted
November 17, 2008—Portland, Oregon

Filed May 1, 2009

Before: William A. Fletcher and Raymond C. Fisher, Circuit
Judges, and John M. Roll, District Judge.[1]

Opinion by Judge William A. Fletcher

---

[1]The Honorable John M. Roll, United States District Judge for the District of Arizona, sitting by designation.

## COUNSEL

Charles Robinowitz, Portland, Oregon, Joshua Thomas Gillelan II (argued), LONGSHORE CLAIMANTS' NATIONAL LAW CENTER, Washington, DC, for the petitioner.

John Randall Dudrey (argued), WILLIAMS FREDRICKSON, Portland, Oregon; Michael Niss, Mark A. Reinhalter,

Rita Ann Roppolo, US DEPARTMENT OF LABOR, Washington, DC, Thomas Shepard, BENEFITS REVIEW BOARD, Washington, DC, Karen P. Staats, OWCP LONGSHORE AND HARBOR WORKERS PROGRAMS, Seattle, Washington, for the respondents.

---

**OPINION**

W. FLETCHER, Circuit Judge:

Rex Dyer prevailed in a workers' compensation claim under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). Dyer then sought attorney's fees pursuant to Section 28(a) of the LHWCA, 33 U.S.C. § 928(a). The Benefits Review Board ("BRB") held that Dyer was entitled to recover only those attorney's fees incurred after his employer, Cenex Harvest States Cooperative ("Cenex"), refused to pay his claim. The BRB held that Dyer was not entitled to recover attorney's fees for the period between his injury and Cenex's refusal. In the jargon of this area of the law, the BRB allowed attorney's fees for the "post-controversion" period but denied fees for the "pre-controversion" period. In addition, the BRB affirmed the District Director's reduction of Dyer's lawyer's requested hourly rate from $350 to $235. Dyer petitions for review in this court.

We hold that Dyer is entitled to both pre- and post-controversion attorney's fees. We do not decide the proper hourly rate for Dyer's attorney. We vacate and remand to the BRB so that it may decide that question under the principles we recently articulated in *Christensen v. Stevedoring Services of America*, 557 F.3d 1049 (9th Cir. 2009), and *Van Skike v. Director, OWCP*, 557 F.3d 1041 (9th Cir. 2009).

## I.    Factual and Procedural Background

On May 3, 2005, Dyer filed a claim for hearing loss under the LHWCA against Cenex and its workers' compensation

insurance carrier, Liberty Mutual Insurance Company. *See* 33 U.S.C. § 908(c)(13). On June 23, 2005, Cenex received notice of Dyer's claim. On June 30, 2005, Cenex contested — or "controverted" — liability and refused to pay. On June 27, 2006, the parties entered into a settlement agreement under which Dyer was awarded a settlement of $33,497.57. The settlement provided that Dyer's attorney was entitled to reasonable attorney's fees and costs under the LHWCA. An Administrative Law Judge from the Office of Workers' Compensation Programs ("OWCP") approved the agreement.

On July 26, 2006, Dyer's attorney submitted an application for attorney's fees to the OWCP. He sought fees from January 31, 2005, when he first began representing Dyer, through July 10, 2006, the date of the fee request. Cenex objected to paying attorney's fees incurred prior to June 30, 2005, the date of controversion. The OWCP's District Director ruled in favor of Cenex. The BRB affirmed in an unpublished order, holding that 33 U.S.C. § 928(a) authorizes payment of attorney's fees only for services performed after controversion.

We heard oral argument on Dyer's petition for review on November 17, 2008. After argument, we requested that the Director of OWCP file a brief advising us of his position on pre-controversion attorney's fees under § 928(a). The Director has now filed a brief, and the parties have had an opportunity to respond.

## II.  Standard of Review

We review the BRB's rulings "for errors of law and adherence to the substantial evidence standard." *Hurston v. Dir., OWCP*, 989 F.2d 1547, 1548 (9th Cir. 1993) (internal quotation marks omitted). Because the BRB is not a policy-making body, we give no special deference to its interpretations of the LHWCA. *See Potomac Elec. Power Co. v. Dir., OWCP*, 449 U.S. 268, 278 n.18 (1980). However, we "accord 'considerable weight' to the construction of the [LHWCA] urged by

the Director of the Office of Workers' Compensation Programs, as he is charged with administering it." *Hunt v. Dir., OWCP*, 999 F.2d 419, 421 (9th Cir. 1993). "Where the relevant statute or statutes are 'easily susceptible to the Director's interpretation, we need go no further.' " *Id.*

## III.   Discussion

### A.   Legal Background

**[1]** The LHWCA, 33 U.S.C. §§ 901-950, was enacted in 1927 to provide "compensation for employees injured while working on the navigable waters or adjoining land areas of the United States." *Day v. James Marine, Inc.*, 518 F.3d 411, 414 (6th Cir. 2008). As originally enacted, the LHWCA followed the American rule on attorney's fees, which requires litigants to pay their own attorney's fees whether they win or lose. *See id.*; *Dir., OWCP v. Robertson*, 625 F.2d 873, 876-77 (9th Cir. 1980). In 1972, the LHWCA was amended to provide that under certain circumstances employers must pay "a reasonable attorney's fee" to a successful claimant. 33 U.S.C. § 928.

**[2]** The LHWCA provides that a successful claimant is entitled to recover attorney's fees from his or her employer in two situations: (1) when the employer denies liability outright, *id.* § 928(a); and (2) when the employer accepts liability and pays or tenders some compensation, but a controversy develops over additional compensation, *id.* § 928(b). Dyer seeks attorney's fees under § 928(a).

Section 928(a) provides for attorney's fees as follows:

> If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter and the person

seeking benefits shall *thereafter* have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer[.]

(emphasis added).

Section 928(b) provides in part:

If the employer or carrier pays or tenders payment of compensation without an award pursuant to section 914(a) and (b) of this title, and thereafter a controversy develops over the amount of additional compensation, [and if the deputy commissioner or Board recommends additional compensation, the employer shall pay or tender that additional amount.] If the employee refuses to accept such payment or tender of compensation, and *thereafter* utilizes the services of an attorney at law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation.

(emphasis added).

Section 928(d) provides in part:

The amounts awarded against an employer or carrier as attorney's fees, costs, fees and mileage for witnesses shall not in any respect affect or diminish the compensation payable under this chapter.

Regulations implementing § 928, promulgated by the Director of OWCP, essentially repeat the statutory language. *See* 20 C.F.R. § 702.134.

**[3]** The attorney's fees provisions of the LHWCA have been incorporated into the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901-944. *See* 30 U.S.C. § 932(a) (incorporating 33 U.S.C. § 928). The Secretary of Labor has broad discretion under the BLBA to depart from the LHWCA by promulgating BLBA-specific regulations. *See id.* That discretion has been delegated to the Director of OWCP. In 2000, the Director of OWCP promulgated regulations under the BLBA that explicitly provide that a prevailing claimant is entitled to pre-controversion attorney's fees. *See* 20 C.F.R. § 725.367.

## B.   Discussion

Section 928(a) imposes four conditions that must be satisfied in order to receive attorney's fees: (1) the claimant must file a claim with the Deputy Commissioner of OWCP; (2) the employer must receive notice of the claim from the Deputy Commissioner; (3) the employer must decline to pay compensation or not respond within 30 days; and (4) the claimant must "thereafter" utilize the services of an attorney to prosecute his claim. *Day*, 518 F.3d at 414. The parties agree without qualification that Dyer has met the first three conditions.

**[4]** The parties also agree that Dyer has met the fourth condition, in that Cenex "declined to pay compensation" and that Dyer "thereafter" employed an attorney. But they disagree as to the amount of attorney's fees Dyer is entitled to recover. The source of their dispute, and the issue in this case, is the meaning of "thereafter" in § 928(a).

Dyer contends that the word "thereafter" requires only that he have employed an attorney after Cenex declined to pay. Once that condition was satisfied, Dyer contends, he became

entitled to all reasonable fees paid to that attorney in connection with the prosecution of his claim. Cenex contends, however, that the word "thereafter" operates in two ways. First, Cenex contends (and Dyer agrees) that it requires that Dyer have employed an attorney after Cenex declined to pay. Second, Cenex contends that it limits the amount of attorney's fees to services performed after Cenex declined to pay.

For the reasons that follow, we hold that "thereafter" means only that the claimant must employ an attorney after the employer declines to pay the claim. That is, we hold that a successful claimant is entitled to both pre- and post-controversion attorney's fees.

"The starting point for our interpretation of a statute is always its language." *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 953 (9th Cir. 2007) (internal quotation marks omitted). To determine the meaning of statutory language, we consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). In addition, the "purpose of a statute may also provide guidance in determining the plain meaning of its provisions." *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (en banc).

**[5]** "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Id.* (internal quotation marks omitted). "Thereafter" is not defined in the LHWCA. The dictionary definition of "thereafter" is "after that" or "from then on." Webster's Third New International Dictionary 2372 (2002). In our view, the most natural reading of "thereafter," as used in § 928(a), is that it requires only that the claimant show that he or she employed an attorney after the employer declined to pay a claim. Our reading does not render "thereafter" superfluous, for it requires that an employer have declined to pay a claim and that the claimant thereafter have used an attorney. *Bosley*

*Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005) ("We try to avoid, where possible, an interpretation of a statute 'that renders any part of it superfluous and does not give effect to all of the words used by Congress.' "). It is possible to read "thereafter" as also limiting the amount of fees to post-controversion services, but that would be, in our view, a somewhat strained reading.

**[6]** Section 928(a) limits attorney's fees to a "reasonable" fee. A "reasonable" attorney's fee is not defined in the LHWCA. We know of no other attorney's fees-shifting statutory scheme in which that term has been interpreted to impart a temporal limitation. *See, e.g.*, *City of Burlington v. Dague*, 505 U.S. 557, 561-67 (1992); *Webb v. Bd. of Ed. of Dyer County*, 471 U.S. 234, 243 (1985); *Anderson v. Dir., OWCP*, 91 F.3d 1322, 1324-25 (9th Cir. 1996).

**[7]** Under § 928(b), attorney's fees must, in addition to being reasonable, be based "solely upon the difference between the amount awarded and the amount tendered or paid." This explicit limitation is evidence that when Congress wanted to limit attorney's fees in the LHWCA beyond the well-known standard of "a reasonable attorney's fee," it did so explicitly. Given this, it would be unreasonable to conclude that the word "thereafter" in § 928(a) reflects a choice by Congress implicitly to impose a temporal limitation on attorney's fees.

**[8]** Our interpretation is reinforced by the admonition in § 928(d) that "[t]he amounts awarded against an employer . . . as attorney's fees . . . shall not in any respect affect or diminish the compensation payable under this chapter." While § 928(d) does not directly control our reading of the word "thereafter" in § 928(a), it clearly expresses a preference that a claimant receive the full amount of his or her award, undiminished by attorney's fees. Declining to require the employer to pay pre-controversion attorney's fees requires the claimant to pay those fees, thereby diminishing the compensa-

tion the claimant obtained. We have previously stated that the LHWCA has "beneficent purposes and [a] humanitarian nature." *Matulic v. Dir., OWCP*, 154 F.3d 1052, 1055 (9th Cir. 1998) (internal quotation marks omitted). "All doubts are to be construed in favor of the employee in accordance with the remedial purposes of the [LHWCA].' " *Id.* (internal quotation marks omitted).

**[9]** That the Secretary of Labor may provide some form of legal assistance to a claimant does not affect our analysis. The LHWCA provides only that the Secretary *may* provide legal assistance to those claimants who request it. *See* 33 U.S.C. § 939(c)(1). The LHWCA plainly contemplates that some claimants will need legal assistance that will not be provided by the Secretary. *See Liggett v. Cresent City Marine Ways & Drydock Co.*, 1997 WL 692212, 136 Ben. Rev. Bd. Serv. (MB) 135 (1997) ("Thus, in the case where a claimant is not accorded legal assistance, and the procedure for initiating and investigating a claim may be beyond a claimant's capabilities, pre-controversion assistance of counsel may indeed be 'reasonable and necessary' for the prosecution of a claim in a given case."). The Supreme Court wrote in *Director, OWCP v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 132 (1995), "To be sure, [the Secretary of Labor] has discretion under § 939(c) to provide 'legal assistance in processing a claim' if it is requested (a provision that is perhaps of little consequence, since the Act provides attorney's fees to successful claimants, see § 928)."

**[10]** We know that "[i]n adopting § [9]28(a), Congress sought . . . to provide an incentive for employers to pay valid claims rather than contest them." *Hunt*, 999 F.2d at 424. If a claimant is entitled only to those attorney's fees incurred after he or she has filed a claim and the employer has declined to pay it, there will be an incentive for claimants not to employ an attorney until after the employer has rejected his or her claim. This delay would impede the sensible and efficient administration of the LHWCA. If a claim is badly prepared

because of the claimant's failure to employ an attorney, the employer may deny what ultimately proves to be a valid claim. In that event, both the employee and the employer will suffer. The employee will suffer because payment of his valid workers' compensation claim will be delayed. The employer will suffer because it will have to pay attorney's fees. (Recall that an employee is not entitled to any attorney's fees unless the employer fails to pay a claim.) This analysis is particularly applicable to claims like the hearing loss claim at issue in this case. Where the injury is not obvious and traumatic but instead requires testing and documentation to prove its existence and/or degree, the assistance of an attorney may be critical to assembling enough information to allow the employer to make an informed decision about the claim.

[11] In his brief to us, the Director of OWCP states that he has consistently interpreted the word "thereafter" in § 928(a) of the LHWCA as we would interpret it. This puts the interpretation of the word beyond any possible doubt, given the deference we owe to his interpretation of the LHWCA. *See Healy Tibbitts Builders, Inc. v. Dir., OWCP*, 444 F.3d 1095, 1098 (9th Cir. 2006); *Hunt*, 999 F.2d at 421; *see also Auer v. Robbins*, 519 U.S. 452, 462 (1997) (deferring to Secretary of Labor's position as advanced in an amicus brief before the Court and rejecting the proposition that deference is not owed to a litigation position because "[t]here [was] simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question").

[12] The BRB's position in this case conflicts with that of the Director of OWCP. The BRB agrees with Cenex that the word "thereafter" in § 928(a) limits the award of attorney's fees to those that were incurred post-controversion. But the BRB has been inconsistent in its interpretation of the word. Between 1979 and 1997, the BRB interpreted "thereafter" as it interprets that word today. *See Jones v. Chesapeake & Potomac Tel. Co.*, 11 Ben. Rev. Bd. Serv. 7 (1979). The BRB changed course in 1997, holding that a successful claimant is

entitled to both pre- and post-controversion attorney's fees under § 928(a). *See Liggett*, 1997 WL 692212. The BRB then changed course again in 2002, reverting to its previous interpretation. *See Childers v. Drummond Co.*, 2002 WL 32301637, Ben. Rev. Bd. No. 01-0585 (2002). We owe deference to interpretations of the LHWCA by the Director of OWCP, but not by the BRB. *Potomac Elec. Power Co.*, 449 U.S. at 278 n.18; *McDonald v. Dir., OWCP*, 897 F.2d 1510, 1511-12 (9th Cir. 1990) (explaining the respective roles of the BRB and the Director of OWCP). But even if we did owe deference to the BRB, its inconsistent positions over the past thirty years would necessarily diminish that deference.

[13] We decline to follow the decisions of our sister circuits that have adopted an interpretation of "thereafter" contrary to the interpretation we adopt today. In *Day*, the Sixth Circuit held, in a 2-1 decision, that § 928(a) authorizes only post-controversion attorney's fees. 518 F.3d at 419. We agree with Judge Rogers, who explained in dissent that the most logical reading of "thereafter" is simply that to succeed a claimant must have used the services of an attorney after the employer controverted the claim. *Id.* at 421-25 (Rogers, J., dissenting).

The Fifth Circuit has also held that § 928(a) authorizes only post-controversion attorney's fees. In *Watkins v. Ingalls Shipbuilding, Inc.*, 12 F.3d 209, 1993 WL 530243, (5th Cir. 1993), the court wrote in an unpublished decision without analysis that authorization of pre-controversion attorney's fees would require "rewrit[ing] the statute." *Id.* at *1. The Fifth Circuit then addressed the issue in a published opinion in *Weaver v. Ingalls Shipbuilding, Inc.*, 282 F.3d 357 (5th Cir. 2002). Despite the submission of a brief by the Director of OWCP setting forth his position that § 928(a) authorizes both pre- and post-controversion attorney's fees, the court held that it was bound by its holding in *Watkins.* 282 F.3d at 359.

At one point, the Fourth Circuit appeared to agree with the Fifth and Sixth Circuits. In *Kemp v. Newport News Shipbuild-*

*ing & Dry Dock Co.*, 805 F.2d 1152, 1153 (4th Cir. 1986), it held that a claimant is not entitled under § 928(a) to pre-controversion attorney's fees, but it predicated its decision on deference to the BRB's then-current interpretation of the section. As we noted above, federal courts do not owe deference to the BRB's interpretations. *See Potomac Elec. Power Co.*, 449 U.S. at 278 n.18. In *Clinchfield Coal Co. v. Harris*, 149 F.3d 307 (4th Cir. 1998), the Fourth Circuit may have recognized its error. *Clinchfield Coal* involved a claim under the BLBA. As noted above, the BLBA incorporates the attorney's fees provision of the LHWCA. *See* 30 U.S.C. § 932(a). The court gave deference to the interpretation of the BLBA by the Director of OWCP and noted that it did not owe deference to an interpretation by the BRB. *Clinchfield Coal*, 149 F.3d at 309. The Director of OWCP has since withdrawn the interpretation of the BLBA that OWCP advanced in *Clinchfield Coal*. It has now promulgated regulations explicitly providing that successful BLBA claimants are entitled to both pre- and post-controversion attorney's fees, bringing its interpretation into line with its interpretation in LHWCA cases. *See* Rules and Regulations, Dep't of Labor, 65 Fed. Reg. 79920 (Dec. 20, 2000); 20 C.F.R. § 725.367.

## Conclusion

**[14]** We hold, in agreement with the Director of OWCP, that Dyer is entitled to both pre- and post-controversion attorney's fees under § 928(a). We vacate and remand to the BRB for further proceedings consistent with this opinion.

Petition for Review GRANTED. Decision on availability of pre- and post-controversion attorney's fees REVERSED. Decision on proper hourly rate VACATED and REMANDED. Costs on appeal to Petitioner.