307 F.3d 1075
 NATIVE VILLAGE OF QUINHAGAK; Native Village of Goodnews Bay; Association of Village Council Presidents; Louie Smith; Annie Cleveland, Plaintiffs-Appellees-Cross-Appellants,
v.
UNITED STATES of America; Gale Norton, in her official capacity as Secretary of the Interior, Defendants, and
State of Alaska; Frank Rue, in his official capacity as Commissioner of the Alaska Department of Fish and Game, Defendants-Appellants-Cross-Appellees.
 No. 01-35430.
 No. 01-35466.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted August 5, 2002.
 Filed October 8, 2002.
 
 Sky Starkey, Homer, AK, for plaintiffs-appellees-cross-appellants Native Village of Quinhagak, Native Village of Goodnews Bay, Association of Village Council Presidents, Louie Smith, and Annie Cleveland.
 William E. Caldwell, Alaska Legal Services Corp., Fairbanks, AK, for plaintiff-appellee-cross-appellant Native Village of Goodnews Bay.
 Dean K. Dunsmore, Department of Justice, Environment & Natural Resources Div., Anchorage, AK, for defendant United States of America.
 Joanne Grace, Anchorage, AK, for defendants-appellants-cross-appellees State of Alaska and Frank Rue.
 Appeal from the United States District Court for the District of Alaska; H. Russel Holland, District Judge, Presiding. D.C. No. CV-93-00023-HRH.
 Before: B. FLETCHER, ALARCÓN, and GRABER, Circuit Judges.
 BETTY B. FLETCHER, Circuit Judge:
 
 
 1
 These appeals involve an award of attorneys' fees resulting from more than a decade of litigation over subsistence fishing rights in Alaskan waters. Defendant-Appellant/Cross-Appellee State of Alaska argues that the plaintiff villages were not entitled to recover fees on the issue of which government — federal or state — could assert jurisdiction to manage subsistence fishing. Plaintiffs-Appellees cross-appeal, arguing that they were entitled not only to the fees awarded, but also to fees incurred during required administrative proceedings.
 
 
 2
 We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the district court's determination that the villages were prevailing parties entitled to attorneys' fees. We reverse its determination that it did not have discretion to award attorneys' fees for pre-litigation administrative activities.
 
 
 3
 * Factual Background & Procedural History
 
 
 4
 Over the past twelve years, the district court has been jointly managing several cases pertaining to subsistence fishing priorities. In 1980, Congress enacted the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. §§ 3101-3233. Title VIII of ANILCA requires that rural Alaskans enjoy a priority for subsistence hunting and fishing on public lands. 16 U.S.C. §§ 3113, 3114. Although ANILCA preempts inconsistent state management, § 805(d) of the Act, 16 U.S.C. § 3115(d), provides in part:
 
 
 5
 The [Interior] Secretary shall not implement[provisions establishing a federal administrative structure] if the State enacts and implements laws of general applicability which are consistent with, and which provide for the definition, preference, and participation specified in [the Act].
 
 
 6
 Pursuant to this provision, in 1982, the Interior Secretary certified the State of Alaska to manage subsistence hunting and fishing on public lands. Alaska v. Babbitt, 72 F.3d 698, 700-01 (9th Cir.1995). Consequently, Alaska passed and implemented state laws granting preference to rural Alaska residents — such as the plaintiffs in this case — to hunt and fish for subsistence purposes. Native Village of Quinhagak v. United States (Quinhagak I), 35 F.3d 388, 390 (9th Cir.1994).
 
 
 7
 In 1989, however, the Alaska Supreme Court invalidated the state subsistence law and rendered the state noncompliant with ANILCA's rural preference requirement. McDowell v. State, 785 P.2d 1, 6 (Alaska 1989); see Quinhagak I, 35 F.3d at 390. Pursuant to 16 U.S.C. § 3115(d), the federal government therefore became responsible for implementing ANILCA on "public lands." Id. The Secretaries of Agriculture and the Interior created the Federal Subsistence Board (FSB) to oversee day-to-day management of subsistence hunting and fishing on "public lands." 50 C.F.R. § 100.3(b). Initially, the Interior Secretary determined that navigable waters were not public lands for ANILCA purposes, and that the FSB therefore lacked jurisdiction to manage subsistence fishing in such waters. Quinhagak I, 35 F.3d at 390.
 
 
 8
 A group of native Alaskan villagers who had engaged in subsistence fishing "since time immemorial" in navigable waters sought reconsideration of the Secretary's exclusion of such waters from the definition of "public lands." The group's request was denied. The group then joined other plaintiffs in a lawsuit asserting two primary claims: (1) that the Secretary improperly excluded navigable and federally reserved waters from management under ANILCA (the "where" issue) and (2) that Alaska had no jurisdiction to regulate the waters in question (the "who" issue). See Katie John v. United States, 247 F.3d 1032 (9th Cir.2001) (en banc) (per curiam).
 
 
 9
 While Katie John was pending in federal district court, the State of Alaska sued the federal government. See Babbitt, 72 F.3d 698, 700-01. Babbitt focused on the "who" issue, but characterized it more broadly than did the Katie John plaintiffs. Because of the substantial overlap between the two cases the district court consolidated Katie John and Babbitt. Although several other cases were filed that turned on the resolution of the "where" and "who" issues in Katie John/Babbitt, the district court declined to consolidate these additional dependent cases and chose, instead, to manage them together and stayed proceedings pending resolution of the core Katie John/Babbitt issues.
 
 
 10
 Meanwhile, as Katie John/Babbitt took shape in federal court, the plaintiffs in the case at hand ("Quinhagak plaintiffs") sought regulatory relief from the FSB and the Alaska Board of Fisheries. After being denied relief by both agencies, they filed suit against the United States and the State of Alaska in federal district court claiming that (1) the federal defendants violated ANILCA by refusing to include navigable waters in the definition of "public lands" and, as a result, failing to extend federal subsistence management to those waters, and that (2) the state defendants violated ANILCA by managing fisheries beyond their jurisdiction. The Quinhagak plaintiffs sought a declaratory judgment that the waters they fished were "public lands" and that the State of Alaska — because of its noncompliance with ANILCA in the aftermath of McDowell — was without jurisdiction to manage subsistence fishing in the contested river systems.
 
 
 11
 The district court added the instant case to the list of cases to be managed jointly in connection with Katie John/Babbitt and, as part of an order explaining how the joint management would proceed, the district court invited the plaintiffs in the jointly managed cases, including the case at hand, to submit amicus briefing on the "who" and "where" issues in the consolidated cases.
 
 
 12
 Consistent with the district court's joint management order, the Quinhagak plaintiffs joined with the Katie John plaintiffs and other parties to file an amicus brief in opposition to Alaska's motion for summary judgment on the "who" issue in the consolidated cases. The Quinhagak, Katie John, and other plaintiffs later submitted supplemental briefing at the court's request.
 
 
 13
 With respect to the "where" issue, the district court determined that the ANILCA subsistence priority applies to all navigable waters in Alaska. Katie John v. United States, No. A90-0484-CV (HRH) Consolidated with No. A92-0264-CV (HRH), 1994 WL 487830, 1994 U.S. Dist. LEXIS 12785 (D.Alaska Mar. 30, 1994). With respect to the "who" issue, the court dismissed Alaska's claim and upheld the federal government's authority to manage subsistence fishing on public lands. Id. Recognizing that the "who" and "where" issues were controlling questions of law, the district court certified both for interlocutory appeal.
 
 
 14
 Several months later, this court reversed the district court's denial of a preliminary injunction in the case at hand, citing the then-pending interlocutory Katie John appeals as evidence that the Quinhagak plaintiffs had presented serious questions on the merits. Quinhagak I, 35 F.3d at 393. We also ruled that the Quinhagak plaintiffs were entitled to recover attorneys' fees under ANILCA, including fees related to their preliminary injunction request. Subsequently, we decided the interlocutory appeals in Babbitt, 72 F.3d at 701, and determined that the subsistence priority extended to the navigable waters at issue in this case, though on different grounds than those upon which the district court relied.[1]
 
 
 15
 Shortly after we issued our Babbitt opinion, the Secretary of the Interior announced his intent to extend the subsistence priority to navigable waters, including those upon which the Quinhagak plaintiffs engage in subsistence fishing. 61 Fed.Reg. 15014 (Apr. 4, 1996). And, in February 2000, the district court entered a final judgment on the merits in favor of the Quinhagak plaintiffs in this case.
 
 
 16
 Pursuant to § 807(a) of ANILCA, 16 U.S.C. § 3117(a), the Quinhagak plaintiffs filed a motion requesting $222,861.52 in costs and attorneys' fees as prevailing parties. On October 24, 2000, the district court granted the request in part. The district court reiterated that, although the current case was not formally consolidated with Katie John/Babbitt, it had been jointly managed along with all other subsistence fishing cases. The court noted that:
 
 
 17
 At all relevant times and with the court's knowledge and encouragement, counsel were coordinating their work, keeping each other notified of what was going on in the litigation, and, for its part, the court served all counsel in all of the cases with all orders which were issued in any of the cases.
 
 
 18
 The district court concluded that, "[b]eyond any question, the plaintiffs have prevailed." The district court acknowledged that the Quinhagak plaintiffs properly raised — through their own case as well as their participation in Katie John/Babbitt — and prevailed on both the "where" and "who" issues,[2] and rejected the arguments the state defendants continue to raise in this appeal — namely, that the Quinhagak plaintiffs should not be entitled to recoup costs for work done in the Katie John/Babbitt consolidated cases. The district court explained that:
 
 
 19
 [T]he Katie John case was the vehicle which the court chose to resolve the `who' and `where' issues for all of the jointly managed cases....
 
 
 20
 For defendants to suggest, as they do, that plaintiffs' work was for different parties in a different case misconstrues and misrepresents the reality of what was going on in these jointly managed cases. For all practical purposes, there was but one case in which the `who' and `where' issues were going to be decided, and that decision was going to be binding in all of the cases. The actual briefs may have been filed (were filed) in the Katie John case, but they bore directly upon issues raised by the plaintiffs in this case.... As to the plaintiffs here, the brief was in reality an amicus brief proffered by a technical non-party, but the court invited and expected those briefs to be filed in the Katie John case as a part of the process of deciding the issues raised by plaintiffs in their complaint in this case. The work is therefore compensable under Section 3117(a).
 
 
 21
 The district court ultimately required the federal and state defendants jointly to pay costs and fees incurred prior to March 18, 1994, on the "where" issue,[3] and the state defendants to pay for all costs of "who" issue litigation and costs for "where" issue litigation after March 18, 1994.
 
 
 22
 The district court, however, without substantial analysis, held that § 807(a) of ANILCA, 16 U.S.C. § 3117(a), did not authorize costs and fees incurred as part of the plaintiffs' efforts to exhaust administrative remedies.
 
 
 23
 The federal defendants do not appeal. The state defendants appeal the district court's grant of fees and costs on the "who" issue, which Alaska contends was not properly raised in this case. Plaintiffs cross-appeal, arguing that the district court erred as a matter of law when it determined that costs and fees are not recoverable under ANILCA if incurred while exhausting administrative remedies.[4]
 
 II
 Standards of Review
 
 24
 We review attorneys' fees awards, or their denial, for an abuse of discretion. See Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1148 (9th Cir.2001). Underlying factual findings are reviewed for clear error. Id. at 1147-48. Statutory interpretation underlying a district court's attorneys' fees determination is reviewed de novo. Fischer v. SJB P.D. Inc., 214 F.3d 1115, 1118 (9th Cir.2000).
 
 III
 Analysis
 
 A. State Defendants' Appeal
 
 
 25
 The state defendants maintain that the plaintiffs in this case failed to raise the "who" issue in their complaint, and therefore are not entitled to attorneys' fees incurred as a result of work done on that issue in the Katie John/Babbitt consolidated case. Title 16 U.S.C. § 3117(a) provides for attorneys' fees and costs as follows:
 
 
 26
 Local residents and other persons and organizations who are prevailing parties in an action filed pursuant to this section shall be awarded their costs and attorney's fees.
 
 
 27
 In order to award attorneys' fees, the district court therefore had to conclude that the Quinhagak plaintiffs were prevailing parties.
 
 
 28
 The district court determined that fees were appropriate on the "who" issue decided in Katie John/Babbitt because the court invited the participation of the parties to the related cases and because resolution of the issue was necessary to each case. Alaska disagrees; the state argues that, although plaintiffs had an interest in which authority — federal or state — would manage subsistence fishing in navigable waters, they based their arguments on this issue entirely on the determination of whether or not navigable waters were "public lands" as defined under ANILCA. As the defendants characterize plaintiffs' argument, if the waters were "public lands," then they were subject, a fortiori, to federal rather than state management. By contrast, Alaska tries to distinguish its own basis for asserting state as opposed to federal jurisdiction in Babbitt, and argues that ANILCA did not grant the federal government jurisdiction to create the FSB and to establish a comprehensive plan, even on public lands. Alaska's position in Babbitt was that Congress — though it conditioned state subsistence management on public lands on the state's having laws consistent with Title VIII — failed to provide the Interior Secretary with express authority to manage public lands should the State of Alaska fail to comply with Title VIII.[5] Because the Quinhagak plaintiffs did not argue this particular reasoning in their complaint and preliminary injunction motion, Alaska maintains that they did not properly join the debate over whether federal or state control should apply.
 
 
 29
 We conclude that Alaska's interpretation of the events underlying the current conflict begs the question. In its March 12, 1993, opposition to the Quinhagak plaintiffs' motion for preliminary injunction, the state defendants acknowledged that their claims about federal jurisdiction were at issue in Quinhagak, stating:
 
 
 30
 The State Defendants submit that the Federal Defendants lack the authority under ANILCA to manage subsistence fishing on the Goodnews, Kanektok, and Arolik Rivers. The State Defendants will be filing an extensive brief on this issue on or before March 19, 1993 in State v. Babbitt. ... The State Defendants will not attempt to address this issue at this preliminary stage [in Quinhagak] in the interest of avoiding duplicative briefing.
 
 
 31
 The state defendants thus recognized that the Babbitt question of whether or not the federal government had jurisdiction was important to resolution of the Quinhagak plaintiffs' claims, and signaled its intent to raise that issue in its defense in response to plaintiffs' contention that the waters were subject to federal management.
 
 
 32
 Moreover, the district court understood that the "who" question — however broadly or narrowly construed — was central to resolution of the Quinhagak plaintiffs' case. If the federal government did not have jurisdiction, as the state defendants claimed, then only the state could manage the fisheries; as the Alaska Supreme Court decided, plaintiffs would be ineligible for any sort of subsistence priority implemented under state auspices. McDowell, 785 P.2d at 6. Therefore, if plaintiffs were going to succeed in their aim of retaining their subsistence interest, their case hinged on more than whether or not the waters in question were on "public lands"; even if the waters were on "public lands" for ANILCA purposes, if the federal government had no jurisdiction to implement the Title VIII subsistence priority, the public v. private distinction would be meaningless.
 
 
 33
 In its order granting costs and fees, the district court also noted that the "who" issue as articulated in Babbitt was narrower than the issue as it played out in the consolidated Katie John/Babbitt litigation. The court ultimately construed the issue broadly, requiring it to resolve whether the state or federal government had jurisdiction — based on all the relevant arguments — to manage subsistence fishing and to implement Title VIII. We conclude that the district court made no error in its understanding of the issues before it, and further did not err in deciding that the Quinhagak plaintiffs properly raised and pursued the "who" issue — as the court invited them to — in the consolidated Katie John/Babbitt case.
 
 
 34
 Because the district court made no error when it determined that the "who" issue involved a broader question about federal as opposed to state jurisdiction and because the Quinhagak plaintiffs properly — and necessarily — addressed that issue as required for resolution of their own case, we hold that the district court was correct to hold that the Quinhagak plaintiffs were prevailing parties on both the "where" and "who" issues. The district court did not abuse its discretion in granting fees and costs for both issues pursuant to ANILCA.
 
 
 B. Plaintiffs' Cross-Appeal
 
 
 35
 The district court denied the plaintiffs' request for fees incurred during the required exhaustion of administrative appeals that ANILCA did not expressly provide for fees for required administrative activities that were necessary prerequisites for bringing suit. Whether ANILCA precludes recovery for such fees is a question of law we review de novo. Fischer, 214 F.3d at 1118.
 
 
 36
 As the district court observed, ANILCA provides only that "persons and organizations who are prevailing parties in an action filed pursuant to this section shall be awarded their costs and attorney's fees." 16 U.S.C. § 3117(a). However, in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley I), 478 U.S. 546, 557, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), the Supreme Court considered § 304(d) of the Clean Air Act which, not unlike the statute at issue here, refers only to the availability of litigation-related fees for "any action." Although a narrow reading would have limited fees to civil actions, the Court determined — by analogy to 42 U.S.C. § 1988 — that the omission of an explicit reference to administrative activities did not necessarily mean that Congress intended to bar recovery of administrative expenses. Id. at 559, 106 S.Ct. 3088. The Court found that
 
 
 37
 the work done by counsel [at issue] was as necessary to the attainment of adequate relief for their client as was all of their earlier work in the courtroom which secured Delaware Valley's initial success in obtaining the consent decree.
 
 
 38
 Id. at 558, 106 S.Ct. 3088. Although, as defendants here point out, the Court was considering expenses for post-litigation administrative costs necessary to the enforcement of a consent decree, the Court did not rely solely on the timing of expenses to justify its reading of the statute. Instead, the Court noted that Congress has often used the terms "action" and "proceeding" interchangeably, even though the former typically connotes a judicial proceeding and the latter more easily encompasses administrative as well as judicial activities. Id. at 559, 106 S.Ct. 3088. More importantly, the Court looked at the importance of the private attorney general role anticipated in both § 1988 and the Clean Air Act. Id. at 560, 106 S.Ct. 3088. The Court concluded — without confining its reasoning to post-litigation administrative activities — that:
 
 
 39
 Given the common purpose of both § 304(d) and § 1988 to promote citizen enforcement of important federal policies, we find no reason not to interpret both provisions governing attorney's fees in the same manner. We hold, therefore, that the fact that the work done by counsel in Phases II and IX did not occur in the context of traditional judicial litigation does not preclude an award of reasonable attorney's fees under § 304(d) for the work done during these portions of the present action.
 
 
 40
 Id. The Court stated that "the [administrative] work must be `useful and of a type ordinarily necessary' to secure the final result obtained from the litigation," id. at 561, a position it noted was consistent with its holding in Webb v. Board of Educ. of Dyer County, 471 U.S. 234, 243-44, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), in which it held that costs associated with optional administrative proceedings are not necessarily compensable automatically, but may nonetheless be awarded at the court's discretion.
 
 
 41
 In 16 U.S.C. § 3111, Congress made clear its purpose in enacting Title VIII of ANILCA. It stressed that subsistence use by rural Alaska residents "is essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence." 16 U.S.C. § 3111(1). Congress determined that
 
 
 42
 the national interest in the proper regulation, protection, and conservation of fish and wildlife on the public lands in Alaska and the continuation of the opportunity for a subsistence way of life by residents of rural Alaska require that an administrative structure be established for the purpose of enabling rural residents who have personal knowledge of local conditions and requirements to have a meaningful role in the management of fish and wildlife and of subsistence uses on the public lands in Alaska.
 
 
 43
 16 U.S.C. § 3111(5) (emphasis added). Congress thus recognized participation in the administrative structure by those dependent on subsistence fishing as a critical component in the proper administration of subsistence fishing on public lands. Congress also explained that a civil suit could be filed only after an allegedly aggrieved person or organization had exhausted all administrative remedies, and provided that such a person should be able to recover costs and fees if she or he prevailed in such an action. 16 U.S.C. § 3117(a). Therefore, consistent with Delaware Valley I, we conclude that administrative proceedings under ANILCA are "useful and of a type ordinarily necessary to secure the final result obtained from the litigation," and that Congress aimed to promote citizen enforcement of the statute.
 
 
 44
 The Supreme Court has noted in other settings that fee provisions should be interpreted in light of the statutory provisions they intend to effectuate. It has determined, for example, that fee awards are appropriate in administrative proceedings under the Equal Access to Justice Act because that act was intended "to diminish the deterrent effect of seeking review of, or defending against, governmental action." Sullivan v. Hudson, 490 U.S. 877, 890, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989) (citation and quotations marks omitted). The Court in Hudson found it "difficult to ascribe to Congress an intent to throw the Social Security claimant a lifeline that it knew was a foot short." Id. at 889-90, 109 S.Ct. 2248.
 
 
 45
 Likewise, here the ANILCA legislative history evidences Congress's awareness of the impoverishment of many people who depend on rural subsistence fishing and an intent to provide them with both judicial and regulatory venues to vindicate their subsistence rights. See Quinhagak I, 35 F.3d at 395 (citing 126 Cong. Rec. S31109 (daily ed. Dec. 1, 1980)). Because of the necessity of developing an accurate and full administrative record in advance of civil litigation, plaintiffs' inability to secure adequate representation during mandatory administrative proceedings would severely hamper their ability to bring such actions in district court. Our conclusions in Quinhagak I — an earlier stage of this same litigation — combined with the Supreme Court's ruling in Delaware Valley I, Hudson, and other cases, militate strongly in favor of permitting recovery of fees and costs for necessary administrative proceedings under ANILCA where a party prevails in a subsequent civil proceeding.
 
 
 46
 Alaska's arguments to the contrary are unavailing. The state relies on our decision in Cann v. Carpenters' Pension Trust Fund, 989 F.2d 313 (9th Cir.1993). In Cann, we held that ERISA's attorneys' fees provision, 29 U.S.C. § 1132(g)(1), does not permit attorneys' fees for the administrative phase of the claims process. 989 F.2d at 314. The statute in Cann provided that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Cann court had to determine whether "action" encompassed only the costs incurred during a lawsuit, or also included expenses incurred as part of pre-litigation administrative proceedings. 989 F.2d at 315. In Cann, we considered Congress's intent in enacting ERISA: to promote "`the soundness and stability of plans with respect to adequate funds to pay promised benefits.'" Id. at 317 (quoting 29 U.S.C. § 1001(a)). We determined that permitting attorneys' fees for administrative activities where a plan participant has prevailed in subsequent litigation could thwart this purpose by encouraging plans to pay questionable claims in an effort to avoid exposure to attorneys' fees claims in the future — an incentive that ran counter to plan "soundness and stability." Id. We held that the congressional objectives that supported broad readings of the term "action" in Delaware Valley I and Hudson were not present in the ERISA context, and therefore adhered to the term's narrower definition and confined the availability of attorneys' fees to court proceedings. Id. at 317.
 
 
 47
 In ANILCA, Congress intended to encourage citizen participation and ensure input from individuals and groups that might otherwise be unable to afford adequate representation. Unlike in the ERISA context, no statutory purpose will be hindered by permitting attorneys' fees for administrative activities; to the contrary, providing for recovery of fees promotes Congress's expressed purpose in enacting the statute.
 
 
 48
 We hold that the district court incorrectly concluded that it lacked discretion, as a matter of law, to award attorneys' fees and costs for expenses that arose from the plaintiffs' efforts to exhaust administrative remedies. On remand, the district court should exercise its discretion to award fees and costs for the services performed by counsel in appropriate administrative proceedings. Native Village, et al., as prevailing party on both the direct appeal and the cross-appeal is entitled to costs.
 
 
 49
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 
 
 
 Notes:
 
 
 [1]
 An en banc panel of this court affirmedBabbitt in a per curiam opinion. Katie John v. United States, 247 F.3d 1032 (9th Cir.2001) (en banc).
 
 
 [2]
 "By their complaint, the plaintiffs put in issue the question of whether the state or the federal government should be required to implement Title VIII of ANILCA. This is the `who' issue."
 
 
 [3]
 On March 18, 1994, the federal government formally changed its litigation position on the "where" issue and sided with the plaintiffs in the case at hand
 
 
 [4]
 We do not reach the question whether, pursuant to § 3117, a district court may award fees to a prevailing plaintiff for local administrative proceedings. The plaintiffs have not made a claim for such fees, and therefore the issue is not before us
 
 
 [5]
 The district court, for its part, rejected this argument: "[T]he clarity of the congressional policy and purpose of ANILCA Title VIII, coupled with the clear grant of general regulatory power to the Secretary, convince the court that the position taken by the Secretary is both authorized and reasonable. The court cannot in good conscience reach the crisis-precipitating decision for which the State argues."