*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LARRY D. DAY,

*Petitioner,*

*v.*

No. 06-4004

JAMES MARINE, INC., and DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

*Respondents.*

>

On Petition for Review of an Order
of the Benefits Review Board.
No. 06-0518.

Argued: November 29, 2007

Decided and Filed: March 7, 2008

Before: ROGERS and SUTTON, Circuit Judges; BERTELSMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Joshua Gillelan II, LONGSHORE CLAIMANTS' NATIONAL LAW CENTER,
Washington, D.C., for Petitioner. Robert D. Nienhuis, GOLDSTEIN & PRICE, St. Louis, Missouri,
Rita Roppolo, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for
Respondents. **ON BRIEF:** Joshua Gillelan II, LONGSHORE CLAIMANTS' NATIONAL LAW
CENTER, Washington, D.C., Steven C. Schletker, STEVEN SCHLETKER, ATTORNEY AT
LAW, Covington, Kentucky, for Petitioner. Robert D. Nienhuis, GOLDSTEIN & PRICE, St. Louis,
Missouri, Rita Roppolo, Mark A. Reinhalter, UNITED STATES DEPARTMENT OF LABOR,
Washington, D.C., for Respondents.

SUTTON, J., delivered the opinion of the court, in which BERTELSMAN, D.J., joined.
ROGERS, J. (pp. 9-12), delivered a separate opinion concurring in part and dissenting in part.

---

[*]The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of
Kentucky, sitting by designation.

---

**OPINION**

---

SUTTON, Circuit Judge. There is a little more to this dispute than the topic (attorney's fees) and the amount at stake (less than $15,000) would suggest. Larry Day says that the Benefits Review Board erred in determining that a portion of the fees he incurred in seeking workers' compensation did not shift to his employer, James Marine, under the Longshore and Harbor Workers' Compensation Act. Because the Board correctly determined that the Act does not allow an employee to collect attorney's fees incurred before the employer has rejected the employee's claim, we affirm this aspect of the Board's decision. But because the Act does allow—and indeed requires—fee shifting from the time the employer rejects the employee's claim through the employee's successful prosecution of that claim, we reverse the Board's contrary ruling on this point.

I.

Larry Day, a 60-year-old welder, began working for James Marine, a boat-repair company, in 1985. In 2000, Day injured his neck while working for the company on the Tennessee River near Paducah, Kentucky, forcing Day to take disability leave. Over the next several years, Day developed additional complications from his neck injury and eventually was forced to stop working. As a result, he filed a claim for workers' compensation under the Act, which ultimately succeeded.

After obtaining compensation, Day sought attorney's fees. The Benefits Review Board allowed Day to obtain fees for two time periods: (1) from October 30, 2001 (when James Marine received the deputy commissioner's notice of claim) until January 17, 2002 (when James Marine began paying disability compensation); and (2) from July 28, 2003 (when James Marine stopped paying disability compensation) until September 16, 2003 (when the case was transferred to an Administrative Law Judge). The end result left James Marine liable for $4,690 in fees and Day responsible for $9,415. Day and James Marine each appeal aspects of this award.

II.

Enacted in 1927, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, provides compensation for employees injured while working on the navigable waters or adjoining land areas of the United States, *id.* § 903; *see also Ne. Marine Terminal Co. v. Caputo*, 432 U.S. 249, 256–57 (1977). Since 1972, the Act, like several other federal statutes, has rejected the "American Rule," which requires litigants to bear their own expenses, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975), and has permitted claimants to obtain "a reasonable attorney's fee" under certain circumstances, 33 U.S.C. § 928(a), (b); *see also, e.g.*, 42 U.S.C. § 1988(b); *id.* § 2000e-5(k) ("Title VII"). Unlike fee-shifting statutes such as § 1988 and Title VII, however, the Act makes fee awards mandatory. It says that a reasonable attorney's fee "shall" be paid, 33 U.S.C. § 928(a), (b), not that it "may" be paid, *see, e.g.*, 42 U.S.C. § 1988(b); *id.* § 2000e-5(k). And unlike these other statutes, the Act establishes a highly reticulated process for determining when mandatory fees must be awarded.

Section 928(a) requires fee awards where the employer refuses to pay workers' compensation after receiving notice of the claim:

> If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter and the person seeking benefits shall thereafter

have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.

33 U.S.C. § 928(a).

Before an employee may obtain fees, in other words, (1) he must file a claim with the deputy commissioner; (2) the employer must receive written notice of the claim from the deputy commissioner; (3) the employer must decline to pay compensation or allow 30 days to lapse without paying compensation; and (4) the employee "thereafter" must use an attorney to prosecute his claim successfully.

Section 928(b) authorizes fees in a different setting—where the employer pays workers' compensation but a dispute develops over the amount of compensation due. It says:

If the employer or carrier pays or tenders payment of compensation without an award pursuant to section 914(a) and (b) of this title, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall recommend in writing a disposition of the controversy. If the employer or carrier refuse[s] to accept such written recommendation, within fourteen days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled. If the employee refuses to accept such payment or tender of compensation, and thereafter utilizes the services of an attorney at law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation. The foregoing sentence shall not apply if the controversy relates to degree or length of disability, and if the employer or carrier offers to submit the case for evaluation by physicians employed or selected by the Secretary, as authorized in section 907(e) of this title and offers to tender an amount of compensation based upon the degree or length of disability found by the independent medical report at such time as an evaluation of disability can be made. If the claimant is successful in review proceedings before the Board or court in any such case an award may be made in favor of the claimant and against the employer or carrier for a reasonable attorney's fee for claimant's counsel in accord with the above provisions. In all other cases any claim for legal services shall not be assessed against the employer or carrier.

*Id.* § 928(b).

This subsection, in excruciating detail, requires four things to happen before fees may shift: (1) an informal conference between the parties; (2) a written recommendation from the deputy commissioner or Board; (3) a refusal by the employer to adopt this recommendation; and (4) the claimant's use of an attorney to obtain more compensation than the employer was willing to pay. Even then, the last sentences of the subsection add other limitations on the amount of any fee award.

A.

Day first argues that § 928(a) allows him to obtain attorney's fees for the period of time *before* his employer had received formal notice of and rejected his claim—what the parties and the Board call "pre-controversion" fees. *See id*. § 914(d). The problem with this argument is that it fails to account for a temporal limitation that § 928(a) places on fee awards. That subsection, recall, authorizes fees only when "the person seeking benefits shall *thereafter* have utilized the services of an attorney at law in the successful prosecution of his claim," *id*. § 928(a) (emphasis added)—only in other words when he files a claim with the deputy commissioner, the employer receives notice of the claim, the employer declines to pay compensation and he "thereafter" uses an attorney to prosecute his claim successfully.

"Thereafter" normally means "after that" or "from then on." Webster's Third New International Dictionary 2372 (2002). We see no good reason to ignore that cue here. This is a statute whose elaborate details suggest that every word matters, that creates other specific preconditions for obtaining fees and that ends by saying this and no more: "In all other cases any claim for legal services shall not be assessed against the employer or carrier." 33 U.S.C. § 928(b). Nor is there anything absurd, or otherwise strange, about saying that fees may shift—particularly on a mandatory basis—only after the employer declines paying the claim. *See Watkins v. Ingalls*, No. 93-4367, 1993 WL 530243, at *1 (5th Cir. Dec. 9, 1993) (rejecting a similar argument and declining "to rewrite the statute").

In addition to respecting the meaning of "thereafter," this interpretation respects its usage in the adjacent subsection. Section 928(b) uses "thereafter" in its first sentence and plainly does so in a context that connotes "after that": "If the employer or carrier pays or tenders payment of compensation without an award . . . and *thereafter* a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall recommend in writing a disposition of the controversy." (emphasis added).

The same inference, indeed a stronger inference, arises from the third sentence of § 928(b): "If the employee refuses to accept such payment or tender of compensation, and *thereafter* utilizes the services of an attorney at law, and if the compensation *thereafter* awarded is greater than the amount paid or tendered by the employer . . . , a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation." (emphasis added). Here we have a similar phrase: § 928(a) says "shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim," while § 928(b) says "thereafter utilizes the services of an attorney at law." And we have the phrase being used in a sentence that later says "thereafter" in a context that no one doubts has an "after that" connotation. It is not often that Congress gives the same term two different meanings in adjacent subsections of a statute, much less in the same sentence of one of those subsections. If words are known by the surrounding "company they keep," *Logan v. United States*, 128 S. Ct. 475, 482 (2007), they are surely known by how they are used in the surrounding sections of the same statute, *see, e.g.*, *Powerex Corp. v. Reliant Energy Servs., Inc.*, 127 S. Ct. 2411, 2417 (2007) ("[I]dentical words and phrases within the same statute should normally be given the same meaning.").

Also supporting this interpretation is the context in which the fee-shifting provisions arose. Congress added the provisions in the 1972 amendments to the Act, which increased workers' benefits at the same time they sought to simplify the process for obtaining compensation. While authorizing fee shifting in discrete circumstances, the amendments created a mechanism for identifying, and resolving, disputes without incurring *any* attorney's fees—"without the necessity

of relying on assistance other than that provided by the Secretary of Labor." *Kemp v. Newport News Shipbuilding & Dry Dock Co.*, 805 F.2d 1152, 1153 (4th Cir. 1986). Under that process, a claimant first files a claim with the deputy commissioner, not the employer. 33 U.S.C. § 913(a). The deputy commissioner conducts an independent investigation into the employee's claim. *Id*. § 919(c). The deputy commissioner assists the claimant in determining the compensation for which he is eligible and in processing his claim—including by "provid[ing] . . . legal assistance." *Id*. § 939(c)(1). Only then, if these non-adversarial steps fail, does the possibility of claim adjudication exist, which suggests that the deputy commissioner offers assistance in the pre-adjudication stage of claims processing in place of, not in addition to, outside counsel, and which furthers a policy of encouraging claimants to use the services of the deputy commissioner, not outside counsel, before the employer knows about, and has a reasonable opportunity to pay, a claim for compensation. *See* S. Rep. No. 92-1125, at 15 (1972) ("It is intended that this assistance be all inclusive and enable the employee to receive the maximum benefits due to him without having to rely on outside assistance other than that provided by the Secretary."); H.R. Rep. No. 92-1441, at 9 (1972) ("Attorney[']s fees may only be awarded against the employer where the claimant succeeds, and the fees awarded are to be based on the amount by which the compensation payable is increased as a result of litigation. Attorney[']s fees may not be assessed against employers (or carriers) in other cases.").

All of this may explain why the statute says that the claimant "shall thereafter have utilized the services of an attorney . . . in the successful *prosecution* of his claim." 33 U.S.C. § 928(a) (emphasis added). In view of the streamlining of the administrative process in 1972 and the user-friendly nature of the system that Congress created with these amendments, it is difficult to characterize pre-controversion fees as part of the "successful prosecution of [a] claim." Before the employer receives notice from the deputy commissioner and rejects a claim, the claimant has nothing to "prosecut[e]"—nothing indeed that the deputy commissioner's alternative-dispute efforts might not resolve on their own.

Day and the Director offer several contrary arguments, all unpersuasive. As they read the statute, it means only that post-dispute attorney assistance is a condition to fee shifting, but once that condition is met the claimant may recover all fees without regard to *when* the claimant incurs the fees—whether before controversion or after. No doubt, this might be a reasonable way to draft a statute in the first instance, and it is the way many other fee-shifting statutes work. *See, e.g.*, 42 U.S.C. § 1988(b); *id*. § 2000e-5(k). But in contrast to these other statutes, this one has a temporal limitation—the "thereafter" clause—one that has little (if any) content under their reading. Not quite true, they respond: "thereafter" still has meaning because, if a claimant does not use an attorney after the employer controverts the claim, fees do not shift. In one sense, they are right: If the claimant uses an attorney before the employer controverts his claim, then successfully prosecutes the claim by himself afterwards, he could not recover fees. But why Congress would be concerned about a situation where the claimant hires an attorney when he does not need one given the Director's duty to facilitate claims collection, including by "provid[ing] . . . legal assistance," 33 U.S.C. § 939(c)(1), but fires that attorney when he does need one given the unsuccessful conclusion of the non-adversarial process and the onset of the adjudicative process is never explained and indeed makes no sense. Statutory interpretation is not an "exercise in the conceivable," *Dir., OWCP v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 135 (1995), or, it follows, an exercise in the inconceivable.

In the alternative, Day and the Director contend that "thereafter" "really has no meaning, . . . no significance as a limitation." But since we expect "[e]very word in the statute" to have "meaning," and since we try to "give effect to all the words to avoid an interpretation which would render words superfluous or redundant," *Walker v. Bain*, 257 F.3d 660, 667 (6th Cir. 2001), they carry a heavy burden. Because "thereafter" has a sensible fee-limiting purpose, because it is surrounded by words that share that purpose and because Congress gave the word a similar meaning throughout § 928, we will not sideline the term.

Principles of administrative deference do not advance the Director's position. Because the Board is not a policymaking body, we review its legal conclusions de novo. *Potomac Elec. Power Co. v. Dir., OWCP*, 449 U.S. 268, 279 n.18 (1980); *Pittsburgh & Conneaut Dock Co. v. Dir., OWCP*, 473 F.3d 253, 258 (6th Cir. 2007). And the Director concedes that his litigation position in this case is not entitled to *Chevron* deference but only to *Skidmore* deference. *See Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 136 (1997).

Under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), deference to an agency's position turns on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* at 140. But in this instance the Director's position fails to give plausible meaning to a provision ("thereafter") that Congress used four times in § 928 and that consistently places a limitation on fee awards; and it fails to respect the design of the statutes, which attempt to make outside counsel a privilege, not a necessity, during the informal, non-adversarial, pre-controversion stage of the claims process.

*Clinchfield Coal Co. v. Harris*, 149 F.3d 307 (4th Cir. 1998), does not change matters. It did not apply *Skidmore* deference, but the near-total deference that we give to an agency's interpretations of its own regulations. *Id.* at 309–10; *see Auer v. Robbins*, 519 U.S. 452 (1997). The Director seeks no such deference here because this dispute does not turn on the meaning of an agency regulation and perhaps because, in the aftermath of *Gonzales v. Oregon*, 546 U.S. 243 (2006), it is far from clear whether even the regulation at issue in *Clinchfield* would receive such deference today. *See id.* at 257 ("[T]he near-equivalence of the statute and regulation belies the Government's argument for *Auer* deference."). No less importantly, *Clinchfield* faced a different question—whether "the award of pre-controversion attorney's fees should depend on whether the [Office of Workers' Compensation], in its initial determination of benefits, accepts or denies the claim." *Clinchfield*, 149 F.3d at 310. Because the deputy commissioner never denied Day's claim, we need not decide that question.

Our colleague disputes this reading of § 928(a), noting that the "literal language" of the subsection covers pre-controversion fees. But there is no more literal approach to statutory interpretation than giving each word in a statute meaning—particularly a word like "thereafter" that Congress conspicuously used four times in § 928. Yet under the dissent's approach, "thereafter" has no plausible role to play: If the employer declines to pay any compensation within the requisite time and if the claimant obtains benefits, reasonable attorney's fees must be awarded. "Thereafter" adds a limitation to the statute under the dissent's reading only if one is willing to assume that Congress meant to prohibit fees for claimants who hired lawyers to handle their initial (unsuccessful) claim and chose to litigate their later (successful) claim by themselves. The government, quite understandably, does not say that is what Congress intended, and neither does the dissent. One does not give a word independent meaning by hypothesizing an interpretation of a statute that makes no sense, that no policy of the statute supports and that not an inkling of legislative history reinforces.

Nor can we dispense with "thereafter" based on analogies to other fee-shifting statutes. Statutes like § 1988 make fees permissible, not mandatory, and their one-sentence rules, *see, e.g.*, 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ."), offer no comparison to the detailed provisions of § 928. That these other statutes permit pre-litigation fees provides no basis for doing so here.

The Black Lung Act also does not provide a meaningful analogy. Contrary to our colleague's suggestion, the Black Lung Act does not incorporate § 928 in its entirety. It says the provisions of the Longshoremen's Act shall apply to coal mine operators "except as otherwise provided . . . by regulations of the Secretary." 30 U.S.C. § 932(a). One exception concerns fees:

The Secretary allows a black lung claimant to recover "reasonable fees for necessary services performed prior to the creation of the adversarial relationship." 20 C.F.R. § 725.367(a). The Secretary has made no similar rule for Longshoremen cases.

The better analogy, it seems to us, is to § 928(a)'s neighbor—§ 928(b)—which does not allow pre-dispute fees. Both subsections work together and provide in so many words—489 to be exact—a comprehensive framework for when fees shall be awarded and for "all other cases" when they "shall not be assessed against the employer." These are rules, not standards. And these rules offer two options. Step one: if the deputy commissioner cannot broker an agreement between the claimant and employer over liability and if the claimant later establishes liability, then reasonable fees "thereafter" incurred "in the successful prosecution of his claim" shall be awarded. Step two: if the employer pays compensation without being ordered to, if a dispute later develops over the "amount of additional compensation" due, if the employer declines to pay the amount of compensation later recommended by the deputy or Board to resolve the dispute and if the employee refuses the employer's offer and "thereafter" uses an attorney at law in obtaining more compensation than the employer offered, then "a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered . . . shall be awarded."

Both subsections use "thereafter" in the same way, and both serve the alternative-dispute resolution features of the 1972 amendments—to urge the employer and claimant to resolve their disputes through the deputy or Board and, if not, to make the employer pay for legal services "thereafter" incurred if the employee manages to win. In one setting, the employer spares itself the risk of fees over *liability* if it agrees that liability exists within 30 days of receiving notice of the claim. In the other setting, the employer spares itself the risk of fees over the *amount of compensation* if it accepts the deputy's or Board's recommendation about the appropriate amount of compensation within 14 days. The one deals with fees incurred *after* a dispute over liability; the other deals with fees incurred *after* a dispute over the amount of compensation due. The salient point is that neither permits fees incurred *before* the relevant dispute. No one in this case (or to our knowledge in any other) disputes this reading of § 928(b). And the meaning of that provision counsels in favor of adopting a parallel interpretation of § 928(a), not in favor of importing rules from other fee-shifting statutes that bear no similarity to this one.

B.

Day also sought pre-controversion fees under § 928(b). But, as we have shown, that subsection also contains a "thereafter" clause, indeed three "thereafter" clauses, which impose a similar limitation. Day and the Director acknowledge that our interpretation of § 928(a)'s "thereafter" clause controls our interpretation of § 928(b). Their position also fails for a separate reason: "The language of subsection (b) plainly states that in order for fees to be assessed under its terms there must be a written recommendation containing a suggested disposition of the controversy." *Pittsburgh & Conneaut Dock Co.*, 473 F.3d at 266. Because the deputy commissioner issued his first written recommendation on December 18, 2001, well after James Marine disputed Day's claim, pre-controversion fees cannot shift under this provision for that reason as well.

C.

Day also challenges the Board's holding that he could not recover *post*-controversion fees under § 928(a)—which is to say, fees incurred from the date of controversion through the successful prosecution of his claim. Under § 928(a), as we have shown, once the employee meets the conditions for fee shifting, the employer becomes liable for the claimant's attorney's fees incurred "in the successful prosecution of his claim." 33 U.S.C. § 928(a). Contrary to the Board's initial position and James Marine's current position, nothing in § 928(a) indicates that the employer may limit its fee-shifting liability by paying some—but not all—of the employee's claim. As to these

fees, Day satisfied all of § 928(a)'s conditions:  (1) he filed a claim with the deputy commissioner; (2) James Marine received written notice of Day's claim from the deputy commissioner; and (3) James Marine controverted that claim.  *See id.*  Because Day thereafter used an attorney in successfully prosecuting his claim, he may recover those fees.

In the Board's unpublished opinion in this case, it took a different view.  An "[e]mployer's liability" under § 928(a), it held, "ceases on the date [it] pays benefits pursuant to the [deputy commissioner's] written recommendations"—regardless of whether the parties continue to dispute liability—"and any fee liability . . . thereafter is governed by [§ 928(b)]."  Since then, the Board has changed course.  In *W.G. v. Marine Terminals Corp.*, 41 BRBS 13 (2007), a published opinion, the Board held that "[p]ursuant to the plain language of Section [928(a)]," when an "employer d[oes] not pay benefits to claimant within 30 days of its receipt of the claim from the [deputy commissioner], its liability for an attorney's fee for work *involving all benefits due on the claim* must be determined pursuant to Section [928(a)]."  *Id.* at *4 (emphasis added).  As is true with Day, *Marine Terminals* dealt with an employee who filed a claim seeking temporary and permanent disability and held that "pursuit of [permanent disability] benefits . . . did not involve a new claim but rather the permanent disability aspect of the previously filed claim."  *Id.*  "Under these circumstances," the Board concluded, "Section [928(a)] must be applied to the entire claim."  *Id.* We reach the same conclusion, one consistent with the tide of appellate authority.  *See Richardson v. Cont'l Grain Co.*, 336 F.3d 1103, 1105 (9th Cir. 2003); *Pool Co. v. Cooper*, 274 F.3d 173, 186–87 (5th Cir. 2001); *cf. Pittsburgh & Conneaut Dock Co.*, 473 F.3d at 263–64 (holding that the pursuit of additional benefits after an initial payment is not a new "claim"); *Va. Int'l Terminals, Inc. v. Edwards*, 398 F.3d 313, 316–17 (4th Cir. 2005) (same).

That James Marine voluntarily paid Day temporary total disability in October 2000, before it received written notice of Day's claim in October 2001, makes no difference.  Even though James Marine voluntarily paid Day some benefits *before* Day filed his claim, it declined to pay additional benefits *after* it received written notice of Day's claim, and that triggers § 928(a).  *See Richardson*, 336 F.3d at 1105 ("Fees under subsection (a) are available even though the Company voluntarily paid compensation before receiving notice of the claim.  The relevant time period we look to for determining whether the employer declined to pay compensation begins with receiving notice of the claim and ends thirty days after.") (alteration and internal quotation marks omitted); *see also Va. Int'l Terminals*, 398 F.3d at 317–18; *Pool Co.*, 274 F.3d at 186–87.

That James Marine paid Day some benefits *after* it controverted Day's claim does not make a difference either.  The question is whether James Marine paid the claim during the 30-day window after it received notice from the deputy commissioner and during which the Act gave it the option to resolve or reject Day's claim.  Because James Marine did not pay the claim during this period, Day may collect post-controversion fees under § 928(a).

III.

For these reasons, we affirm in part and reverse in part.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

ROGERS, Circuit Judge, dissenting. The literal language of § 928(a) provides for the award of reasonable attorney's fees in this case regardless of whether the fees were for representation before or after "controversion." While the provision for "reasonable fees" might be limited to fees for court work but not work done at the claim-preparation level, such an argument has been consistently rejected in numerous analogous contexts and it would be anomalous to accept such an argument here. The only basis for coming to a different conclusion in this case is the limitation in § 928 on the award of any fees to cases in which the services of an attorney are utilized *after* the employer has declined to pay within thirty days of notice of the claim. This limit, which gives full meaning to the word "thereafter" in the statutory language, simply does not address the scope of the fees awarded once the condition is met. To read more into the statutory language is the equivalent of adding words that are not there. I therefore respectfully dissent from parts II.A and II.B of the majority opinion, while I concur in the remainder of the majority opinion.

In relevant part, § 928(a) provides that

> *If* the employer . . . declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim . . . *and* the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, *there shall be* awarded . . . a reasonable attorney's fee . . . in an amount approved by the deputy commissioner, Board, or court . . . which shall be paid directly by the employer . . . to the attorney for the claimant.

33 U.S.C. § 928(a) (emphasis added). Thus, if: (1) the employer, after receiving notice, refuses to pay compensation within thirty days, and (2) the employee subsequently uses an attorney's services in the successful prosecution of his claim, then (3) responsibility for "reasonable" fees shifts to the employer. The "thereafter" clause thus makes the post-controversion use of legal services, like employer refusal, a precondition to fee shifting. The "thereafter" clause does not, however, by its terms act to limit the services for which fees may shift. The "thereafter" language is not even located in the clause of § 928(a) addressing the type of fees awardable and the method of their payment, which is found in the latter half of that subsection and similarly makes no mention of temporal limitations. In fact, the only explicit restriction anywhere in § 928(a) on what fees may be awarded is that they must be "reasonable."

There is simply no way that the word "thereafter" has no meaning or effect under this reading, or that it does not have its dictionary meaning of "after that." Pre-controversion fees do not shift unless the employer controverts its liability and "after that" the employee utilizes an attorney's services in the successful prosecution of his claim. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2372 (2002) (defining "thereafter" to mean "after that" or "from then on").

There is, moreover, a perfectly logical rationale for reading the "thereafter" clause—as it is written—as a precondition to any fee-shifting. If an employer decides to pay a claim within thirty days, even when a lawyer worked to help present the claim, the employer does not have to pay the attorney's fees. This encourages employers to pay claims they are not sure of winning in court, and thus serves as a powerful encouragement to pay promptly without litigation.

Absent reliance on the "thereafter" clause, § 928(a) would certainly be interpreted properly to provide for pre-controversion fees, in light of the consistent court holdings regarding analogous schemes for the provision of attorney's fees. Like § 928, most federal fee-shifting statutes, such as

the Equal Access to Justice Act and the Civil Rights Attorney's Fees Awards Act of 1976, state only that awards of attorney's fees, where appropriate, must be "reasonable." *See* 28 U.S.C. § 2412(b), (d)(2)(A); 42 U.S.C. § 1988(b). The Supreme Court has explained that this language "[n]ormally [permits recovery for] all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (interpreting § 1988). "Of course, some of the services performed before a lawsuit is formally commenced . . . are performed 'on the litigation.'" *Webb v. Bd. of Educ. of Dyer County, Tenn.*, 471 U.S. 234, 243 (1985) (interpreting § 1988). Thus, a "reasonable" fee award may include money for tasks completed in anticipation of litigation if they were "both useful and of a type ordinarily necessary to advance . . . the litigation." *Id.* The Courts have accordingly permitted awards of attorney's fees for pre-litigation work under, for example, the Voting Rights Act, *see Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993), the Alaska National Interest Lands Conservation Act, *Native Village of Quinhagak v. United States*, 307 F.3d 1075, 1083 (9th Cir. 2002), the Equal Access to Justice Act, *Pollgreen v. Morris* 911 F.2d 527, 536 (11th Cir. 1990), the Civil Rights Attorney's Fees Awards Act of 1976*, Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991), and the Employee Retirement Income Security Act, *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1345 (11th Cir. 2001).

To preclude pre-controversion fees would be entirely anomalous and out of sync with all of these cases unless the "thereafter" clause makes § 928 different. But the "thereafter" clause does nothing of the sort, and it follows as a matter of pure statutory interpretation that pre-controversion fees may be awarded.

Such awards are moreover supported by the policies underlying the Act, as the Director persuasively asserts in this case. First, the availability of pre-controversion fee awards promotes the swift resolution of compensation disputes. As the Supreme Court has observed, the main policy of the Act is to "encourage the prompt and efficient administration of compensation claims." *Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 612 (1981). Shifting pre-controversion fees furthers this end by making it less cost-prohibitive for employees to obtain legal representation during the claims-filing stage. When employees utilize the services of an attorney during this period, they are able to develop their cases earlier and more fully. This, in turn, allows both parties to assess the strength of the claim more accurately, enabling them to make better informed choices and the dispute resolution process to proceed more efficiently. Where the employee does have a meritorious compensation claim, it is advantageous for both parties to be aware of that early on in the process. Armed with such knowledge, most employers will begin voluntarily paying compensation, thereby avoiding costly adjudicatory proceedings and the shifting of attorney's fees. Employees, of course, will benefit in this situation by receiving compensation sooner, rather than later. When a claim is without merit, on the other hand, it is likewise preferable for the parties to be informed of that as soon as possible. Particularly from the employer's standpoint, it is important to know whether the employee's claim is truly weak, or merely appears weak because the employee does not have the legal training to properly present his claim. Without such knowledge, the employer risks either paying compensation unnecessarily, or erroneously controverting the claim and eventually incurring substantial costs and fees.

Second, along with promoting the efficient resolution of compensation disputes, the shifting of pre-controversion fees prevents an employee's recovery from being diminished by attorney's fees. Section 928 was "designed to ensure that an employee will recover the full amount of his statutory benefits" and "will not have to reach into [those] benefits to pay for legal services, thus diminishing the ultimate recovery." *Oilfield Safety & Mach. Specialties, Inc. v. Harman Unlimited, Inc.*, 625 F.2d 1248, 1257 (5th Cir. 1980); *see also Bethenergy Mines, Inc. v. Dir., Office of Workers' Comp. Programs*, 854 F.2d 632, 637 (3d Cir. 1998); *Dir., Office of Workers' Comp. Programs v. Simmons*, 706 F.2d 481, 485 (4th Cir. 1983). If pre-controversion legal fees cannot be shifted, an employee's compensation will, for all practical purposes, necessarily be reduced in many cases.

Further, awarding attorney's fees for services performed during the claims-filing period is consistent with the 1972 amendments to the Act, which streamlined the dispute resolution process. It does appear that in passing these amendments, Congress was trying to reduce an employee's need for counsel during the claims-filing period by giving the Secretary a larger role in resolving compensation disputes. Congress appears to have hoped that these changes would allow employees, if they wished, to rely on the Secretary for advice. *See* H. Rep. No. 92-1441 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 4698, 4710 (expressing a desire that assistance from the Secretary would "enable the employee to receive the maximum benefits due to him without having to rely on outside assistance"). But Congress did not expect such aid from the Secretary always to be forthcoming; the assistance of attorneys would thus often still be necessary. Although § 939 of the Act requires the Secretary to provide employees with certain general information, it does not mandate that she act as their lawyer. Under the terms of that section, the Secretary "shall" supply employees with information concerning, for example, the scope of the Act's coverage or the availability of rehabilitation services. 33 U.S.C. § 939(c)(1). With respect to specific legal advice, however, § 939 states only that the Secretary "*may*, upon request, provide [employees] with legal assistance in processing a claim." *Id.* (emphasis added). The discretionary nature of legal assistance from the Secretary is confirmed by the legislative history to the amendments, which states that "[t]he bill also makes legal assistance in processing the claim for benefits . . . available in needy cases upon request subject to the Secretary's discretion." H.R. Rep. 92-1441 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 4698, 4710. Congress's recognition that legal assistance would sometimes be needed, yet not available from the Secretary, certainly allows the conclusion that Congress permitted the shifting of pre-controversion fees.

Pre-controversion Secretarial assistance is also consistent with the availability of pre-controversion fees in light of the risk that no fees will shift because the employer pays the claim within the thirty days. Employees with a less than certain claim will obtain risk-free help in processing their claim by turning to the Secretary in the first instance, and resorting to an attorney only where the Secretary is unable to provide assistance.

Finally, the categorical exclusion of pre-controversion fees would require attorney's fees to be artificially divided based upon the time at which the underlying legal assistance was given. What should be most relevant, however, is not the fortuity of when a service is performed, but whether that service contributed to a successful outcome. Services are no less "useful" to the prosecution of a claim simply because they are performed prior to an employer's controversion.

While these many policy considerations are not controlling, they do confirm a straightforward reading of § 928 to permit reasonable pre-controversion attorney's fees as long as the services of an attorney are utilized after the employer disputes its liability or simply does not pay within the thirty-day post-notice period.

This conclusion is further bolstered by a certain amount of deference that we owe the Director in the interpretation of the Act. Exactly as the Supreme Court held with respect to the Director's interpretation of a different provision of the same Act:

> Our view, as it turns out, coincides on this point with the position taken by the Director of the Office of Workers' Compensation Programs (OWCP), who is charged with the administration of the Act, and who also construes the Act [the same way as reasoned earlier in the opinion]. See Brief for Director, Office of Workers' Compensation Programs 12-21, 24-31. The Secretary of Labor has delegated the bulk of her statutory authority to administer and enforce the Act, including rule-making power, to the Director, see *Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 125-126 (1995); *Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs*, 519 U.S.

248, 262-263, (1997), and the Director's reasonable interpretation of the Act brings at least some added persuasive force to our conclusion, *see, e.g., Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (giving weight to agency's persuasive interpretation, even when agency lacks "power to control"); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 345-346 (1997).

*Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 136 (1997). It is true that the Director's interpretation has not been consistent over the years, *see Childers v. Drummond Co.*, 2002 WL 32301637, at *4 (Ben. Rev. Bd. 2002), and this lessens the level of *Skidmore* deference somewhat. *See Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 143 (1976). But this inconsistency is not enough to discount wholly the Director's considered interpretation, *id.*, and *Skidmore* deference thus brings some added force to the conclusion that pre-controversion fees are permitted by § 928.

There is yet one more consideration in favor of interpreting §928 to permit pre-controversion fees. Doing so ensures that identical sections of the Act and the Black Lung Act are interpreted in the same manner. Pursuant to 30 U.S.C. § 932(a), the Black Lung Act incorporates § 928 in its entirety. Normally, "when Congress uses the same language in two statutes having similar purposes . . ., it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005). Under the regulations to the Black Lung Act, which are entitled to the more deferential *Chevron* deference, attorney's fees payable under that statute "shall include reasonable fees for necessary services performed prior to the creation of the adversarial relationship." 20 C.F.R. § 725.367(a). To give § 928 a different reading under the Act would create an anomalous incongruence in the meaning of identical language in two analogous statutory provisions.

For these reasons, reasonable pre-controversion fees are permitted by § 928(a). This conclusion obviates the need to interpret § 928(b) in this case. I therefore respectfully dissent from parts II.A and II.B of the majority opinion, although I join in the rest.